A06A1606. SAKS ASSOCIATES, LLC v. SOUTHEAST CULVERT, INC.
A06A1607, A06A1608. SOUTHEAST CULVERT, INC. v. SAKS ASSOCIATES, LLC (two cases).

(638 SE2d 799)

JOHNSON, Presiding Judge.

On December 2, 2003, Southeast Culvert, Inc., a supplier of corrugated pipe and other drainage goods, filed a materialman's claim of lien for $91,824 against a seven-acre parcel of property in Gwinnett County. In the claim of lien, Southeast identified Five Star Builders as the contractor that had requested the materials in question, and Southeast named SAKS Associates, LLC, as the owner of the property upon which its materials had been used.

A week later, on December 9, 2003, Satish A. Poddar, the sole member and manager of SAKS, sent a letter to the president of Southeast. Writing on paper bearing the SAKS letterhead, Poddar acknowledged that the lien was against SAKS' property. He further stated that he had dismissed Five Star Builders as contractor and guaranteed future payment of $67,175 to Southeast in order to continue the project, which involved developing medical offices on the property.

Three months later, in March 2004, SAKS, Poddar and Southeast entered into an agreement which provides that SAKS owns the property that has been improved, that Southeast has not been fully paid for materials and services supplied to the property, that SAKS will pay Southeast $26,573 for the prior materials and services, that SAKS will pay Southeast $69,004 for new materials and services, and

that Poddar personally guarantees SAKS' obligations under the agreement. Poddar signed the agreement both in his individual capacity and as SAKS' manager.

Southeast eventually received the promised payment of $26,573. Pursuant to the parties' agreement, Southeast reduced its claim of lien by that amount, filing an amended claim of lien to reflect a new amount of $65,280. The amended claim of lien once again identified SAKS as the property owner and Five Star Builders as the contractor that had requested the materials.

In the meantime, some five months after the first claim of lien had been filed, the contractor filed a bankruptcy petition. Thereafter, on November 12, 2004, Southeast filed the instant action against SAKS to foreclose the materialman's lien. In its complaint, Southeast asserted that SAKS is the owner of all the property in question, that SAKS has been developing the property as buildings for lease or sale to medical or health care providers, and that SAKS had entered into an agreement with Five Star Design & Builders to act as the contractor for the development and improvement of the property. SAKS timely filed its answer, expressly admitting the above factual assertions made in the complaint.

SAKS later moved for summary judgment on the ground that the contractor identified in the claim of lien, Five Star Builders, is not the same contractor identified in the complaint, Five Star Design & Builders, and therefore Southeast had not complied with the requirement that it sue the contractor named in the claim of lien before seeking recovery against the property owner. The trial court denied the motion for summary judgment, and the case proceeded to a bench trial.

At trial, Southeast presented evidence that Five Star Design & Builders had applied for credit with it. But on the application, the company did not use its full name, and instead identified itself only as Five Star Builders. Southeast approved the contractor for a line of credit and subsequently provided it with materials worth more than $100,000 for use on the medical office project. Five Star, however, made only one payment of $10,844 to Southeast, using a check drawn on an account bearing the name Five Star Builders.

In its defense, SAKS, for the first time, claimed that it was not the sole owner of the property in question. Over objections by Southeast, the trial court allowed SAKS to present evidence indicating that less than two months before the claim of lien was filed, it had conveyed 1.4 acres of its seven-acre parcel to S. A. P. Associates, LLC, of which Poddar is the controlling majority member and Erchna Poddar is a minority member.

The trial court entered judgment in favor of Southeast, ruling that the lien in the amount of $65,280 is deemed perfected and that

Southeast is also entitled to $7,235 as interest, for a total judgment of $72,515. SAKS appeals from the final judgment in Case No. A06A1606. Southeast cross-appeals in Case No. A06A1607, and also appeals in Case No. A06A1608 from the denial of its motion to dismiss SAKS' appeal due to a delay in the filing of the trial transcript.

## Case No. A06A1606

1. SAKS contends that the contractor identified in the claim of lien, Five Star Builders, is an entirely different entity from the project contractor identified in the complaint, Five Star Design & Builders. Claiming that the instant case is identical to and controlled by the case of *Brockett Road Apts. v. Ga. Pacific Corp.*,[1] SAKS argues that Southeast's failure to commence suit against the contractor named in the claim of lien is fatal to its action and therefore the trial court erred in entering judgment in favor of Southeast. The argument is without merit.

OCGA § 44-14-361.1 (a) sets out the provisions for perfecting a lien. These provisions require a materialman who has substantially complied with the contract for materials to (a) file a claim of lien in the county where the property is located within three months of furnishing the materials; (b) send a copy of the lien claim to the property owner; (c) commence an action against the contractor to recover the amount of the claim within 12 months of when the claim became due; and (d) file a notice of the action with the superior court clerk of the county where the lien was filed so that the clerk can enter information about the lawsuit in county records.[2]

Under certain circumstances, including the bankruptcy of the contractor, the materialman need not commence an action against the contractor and may instead bring an action directly against the property owner.[3]

OCGA § 44-14-361.1 (a) (4) provides, in part, that where a contractor is adjudicated bankrupt or, if after an action is filed, no final judgment can be obtained against the contractor because of his adjudication in bankruptcy, the materialman need not file an action or obtain judgment against the

---

[1] 138 Ga. App. 198 (225 SE2d 771) (1976).

[2] (Citation omitted.) *Few v. Capitol Materials*, 274 Ga. 784, 784-785 (1) (559 SE2d 429) (2002).

[3] Id. at 785 (1).

contractor before enforcing a lien against the improved property. This subsection further provides that the materialman may enforce the lien directly against the property by filing an action against the owner within 12 months from the time the lien becomes due.[4]

In the instant case, it is undisputed that approximately five months after the claim of lien was filed, the contractor filed a bankruptcy petition. It has been held that the filing of a bankruptcy petition brings a contractor within the meaning of the "adjudicated a bankrupt" language of OCGA § 44-14-361.1 (a) (4).[5] Since the contractor filed a bankruptcy petition, Southeast did not even have to file an action or obtain judgment against it as a prerequisite to filing the instant action against SAKS.[6]

That fact alone distinguishes the instant case from the *Brockett Road Apts.* case, which did not involve a bankrupt contractor. In that case, the plaintiff identified one entity as the contractor in its materialman's lien, but then identified a completely different entity as the contractor in its complaint.[7] On appeal, this court held that because the plaintiff was relying on the lien as the basis for its suit, the facts shown in the copy of the lien attached to the complaint must prevail over the allegations in the complaint, and thus the plaintiff was bound to commence suit against the contractor named in the lien as a condition precedent to foreclosure.[8]

In the instant case, as noted above, Southeast was not bound to commence suit against the bankrupt contractor. Moreover, SAKS' contention that the contractor identified in the claim of lien is different from the contractor that in fact worked on the project and that Southeast identified in the complaint is disingenuous and disproved by the record.

The evidence establishes that throughout its dealings with Southeast, the contractor for the project, Five Star Design & Builders, identified itself to Southeast as Five Star Builders. When first contacted by a Southeast salesman, the owner of the contracting company identified his business as Five Star Builders. On its written application for credit with Southeast, the contractor identified itself as Five Star Builders. And when it made its lone payment to Southeast, it did so on a check bearing the name Five Star Builders. In fact,

---

[4] *Northside Wood Flooring v. Borst*, 232 Ga. App. 569, 570-571 (1) (502 SE2d 508) (1998).

[5] Id. at 572 (2); *Reid v. Harbin Lumber Co. &c.*, 172 Ga. App. 615, 616-618 (1) (323 SE2d 845) (1984).

[6] Compare *Few*, supra at 787 (2).

[7] *Brockett Road Apts.*, supra.

[8] Id. at 199.

when Five Star Design & Builders sought bankruptcy protection, it filed a document with the bankruptcy court that listed two other trade names it had used in the past six years, the first of which was Five Star Builders.

Furthermore, after the claim of lien was filed, Poddar acknowledged in the letter he sent on behalf of SAKS to Southeast that the contractor named in the lien was the same contractor for the medical office project. Indeed, in that letter, Poddar himself twice referred to the contractor as "Five star builders." Moreover, Poddar and SAKS again acknowledged that the contractor named in the claim of lien is the same contractor that had worked on the project when they entered into the agreement guaranteeing payments to Southeast.

It is true that SAKS has shown there is another company in Georgia called Five Star Builders, Inc., which is not the same company as Five Star Design & Builders. But the evidence unequivocally establishes that Five Star Builders, Inc., is not the same entity as the Five Star Builders named in the claim of lien. First, in identifying the contractor as Five Star Builders in the claim of lien, Southeast listed the contractor's address as 2295 Towne Lake Parkway, Suite 204, Building 116, Woodstock, Georgia 30189. That was the address for Five Star Design & Builders, not the address for Five Star Builders, Inc., which is located in the city of Jonesboro. Moreover, the president of Five Star Builders, Inc., swore in an affidavit that his company has not been engaged in the construction business since 1996, that it has never had any contract with or performed any work for SAKS, that it never performed any work on the medical office project that is the subject of this case, and that it has never conducted any business with Southeast.

We are mindful that lien statutes are in derogation of common law and must be strictly construed in favor of the property owner and against the materialman.[9] But even under such strict construction, the trial court did not err in finding that Southeast had perfected its lien. Because Southeast identified the same entity as the contractor in both the lien and the complaint, albeit by different names used by that contractor, and because the contractor filed for bankruptcy, the instant case is not controlled by the holding in *Brockett Road Apts.* SAKS' reliance on that case is misplaced and it has failed to show any basis for reversing the judgment of the trial court.

2. SAKS argues that Southeast should not be allowed to foreclose upon its lien because in the claim of lien it failed to identify S. A. P. as an owner of the property. In its final order, the trial court rejected this

---

[9] *Few*, supra at 785 (1).

argument on the ground that SAKS is bound by its judicial admissions that it is "the owner" of the property, and thus it cannot now claim someone else as the property owner. Because the trial court did not abuse its discretion, we must affirm its ruling.

"Under OCGA § 24-3-30, admissions in judicio in a party's pleadings bind the party so that they cannot put up evidence over objection to contradict such admissions."[10] However, if the party amends its pleadings to withdraw the admissions, it may then introduce evidence contravening the admissions.[11] If such contradictory evidence is admitted, even over the objection of the other party, then under OCGA § 9-11-15 (b), such evidence may be deemed to amend the pleadings to withdraw the admissions.[12]

In the instant case, Southeast asserted in its complaint that at all times mentioned in the complaint SAKS was and currently is the owner of the entire seven-acre parcel of property in Gwinnett County. Southeast further asserted that at all times mentioned in the complaint SAKS has been developing and improving the entire seven-acre piece of property as medical offices. In its answer, SAKS admitted these allegations. But at trial, the court allowed SAKS, over Southeast's objections, to contradict its admissions that it owns and has been developing all the property in question by introducing evidence that S. A. P. owns a portion of the property.

Nevertheless, the mere existence of this conflicting evidence does not mandate a finding that SAKS' pleadings were amended and the admissions withdrawn. On the contrary, it is clear from the record that SAKS never withdrew its admissions, and that the trial court, despite having allowed the conflicting evidence, did not allow SAKS' answer to be amended and instead held that SAKS is bound by its admissions in judicio.

> [M]erely because conflicting evidence may exist as to a given issue of fact, this will not prevent per se a party from making an admission in judicio in his pleadings as to that fact. However, if the trial court admits that conflicting evidence, and either the court (e.g., when ruling on a motion for summary judgment) or the jury (when reaching its verdict) considers the conflicting evidence on the merits, the pleadings at that point become amended to conform to such evidence. This is because, by admitting the evidence and allowing the factfinder to consider it, the trial court has in

---

[10] (Citations omitted.) *Wahnschaff v. Erdman*, 232 Ga. App. 77, 78 (1) (502 SE2d 246) (1998).

[11] Id.

[12] Id.

effect, either sua sponte or by overruling an opposing motion, tacitly permitted the pleading party to withdraw the admission contained in the pleadings. Conversely, when the trial court does not allow the conflicting evidence to be admitted or, where applicable, elects not to consider the issue on the merits, the admission of fact made in the pleadings remains in full force and effect as an admission in judicio and is conclusive of the fact admitted. . . . Basically, the rule vests the trial court with discretion to determine whether an admission of fact made in pleadings should be withdrawn, thereby allowing the pleadings to be amended by conflicting evidence admitted and considered on the merits.[13]

In this case, the trial court expressly ruled in its final judgment that SAKS is estopped from making any argument about another entity owning the property because of the judicial admissions contained in its answer and other pleadings. It is clear from this ruling that the trial court did not consider the issue of ownership of the property on its merits, and instead elected not to allow SAKS to amend its pleadings and withdraw the admissions in judicio that it owns and has been developing all of the property in question. Because SAKS has made no showing that the trial court abused its discretion in treating the admissions in judicio as conclusive, we find no error.[14]

3. SAKS' final enumerated error is that the trial court erred by not granting its motion to dismiss Southeast's amended complaint. SAKS, however, has not indicated where in the record it filed such a motion to dismiss or where the court ruled upon such a motion. Our own review of the record likewise reveals no such motion or ruling. This court will not consider issues which were not raised and determined in the trial court; enumerations of error raising questions for the first time on appeal present nothing for decision.[15]

*Case No. A06A1607*

4. Southeast states in its brief that this cross-appeal is conditioned only on a reversal of the judgment of the trial court in the main appeal. Southeast further states that if we affirm the judgment of the trial court, then its cross-appeal shall be deemed withdrawn. Because

---

[13] (Emphasis omitted.) *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 519-520 (1) (434 SE2d 63) (1993).

[14] Id.

[15] *Rowe v. Fleet Mtg. Corp.*, 226 Ga. App. 593, 594-595 (3) (487 SE2d 133) (1997).

we have affirmed the judgment of the trial court in the above divisions, Southeast's cross-appeal is hereby deemed withdrawn.

### Case No. A06A1608

5. Southeast challenges the trial court's denial of its motion to dismiss SAKS' appeal in Case No. A06A1606 based on a delay in the filing of the trial transcript. While we are troubled by SAKS' explanation as to why it failed to file the transcript until some four months after it was due, and by the trial court's findings of fact based on the evidence, in light of our above holding affirming the judgment of the trial court in Case No. A06A1606, we need not address this issue. Accordingly, this appeal is dismissed as moot.

*Judgment affirmed in Case No. A06A1606. Appeals dismissed in Case Nos. A06A1607 and A06A1608. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 9, 2006.

*Thompson, O'Brien, Kemp & Nasuti, Bret T. Thrasher, Taylor I. Mehrtens*, for appellant.

*Cohen, Goldstein, Port & Gottlieb, Neil A. Moskowitz*, for appellee.