**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2014**

# In the Court of Appeals of Georgia

A13A2177. COMMUNITY MAGAZINE, LLC et al. v. COLOR    DO-109
    XPRESS.

DOYLE, Presiding Judge.

Color Xpress filed the instant suit on an account against Community Magazine LLC and Ed Chapman, alleging that Community Magazine owed Color Xpress $89,842.33 in principal plus interest on an open account for printing services provided by Color Xpress. Color Xpress also alleged that Chapman signed a personal guarantee for the debts of Community Magazine and was therefore liable for the same. The trial court entered an order granting Color Xpress's motion for summary judgment, and this appeal followed. For the reasons that follow, we reverse in part and affirm in part.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that Color Xpress filed an action on an open account, claiming that it provided printing services to Community Magazine for which the defendants owed an outstanding balance of $89,842.33. Attached to the complaint were seven pages of a statement issued by Color Xpress to Community Magazine for services beginning on June 25, 2008, with a beginning balance of $0, to December 31, 2010, on which date the balance owed including finance charges was $103,020.56. The address for Color Xpress listed on the statement was 132 Jetplex Lane, Madison, AL. Also attached to the complaint was a one-page document executed in August 2010 by Ed Chapman that included an "Authorization to Obtain Bank Credit Information," and a "Personal Guarant[y]" of the debts of Community Magazine.

The Authorization to Obtain Bank Credit Information stated, "I authorize the bank(s) listed as reference(s) on reverse side to release information for consideration

---

[1] (Citations omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

of open account privileges for COLOR EXPRESS." Over the line "(address) (city) (state)" appears "132 Jetplex Lane[,] Madison, Alabama." Next, above the line "(signature) (title) (date)" appears "Ed Chapman Owner 8/13/10."

Next, a paragraph entitled "Personal Guarant[y]" states the following:

[t]o induce ColorXPress to approve this Credit Application and in consideration of its so doing, we (or I), the undersigned, do hereby jointly, severally and personally guarantee the above purchaser's full performance of its obligations and hereby agree to indemnify ColorXPress against any and all damage, loss, expense (including attorney's fees) and/or liability sustained by ColorXPress by reason of or related to, the above purchaser's failure to perform or to pay when due, charges incurred in accordance with the above agreement. . . .

No other pages of an alleged credit application appear in the record.

Color Xpress thereafter filed a motion for summary judgment, attaching the affidavit of Harold Motter, who stated that he was the owner of Color Xpress, and he claimed that Community Magazine owed an outstanding balance of $89,842.33 in principal plus interest.[2] Ed Chapman filed a pro se response to the motion for summary judgment, contending that Color Xpress had failed to show that he or

---

[2] Color Xpress also submitted an email between Motter and Chapman that contained reference to a past due balance of $89,972.08, which is referenced in Motter's affidavit.

Community Magazine agreed to establish a credit account or a personal guarantee, and any amount due was undetermined. Chapman attached an affidavit supporting his response, but did not provide specific figures supporting his argument that Community Magazine did not owe a debt to Color Xpress. It is unclear whether a hearing on the motion for summary judgment was held,[3] but the trial court entered an order granting Color Xpress's motion on May 15, 2013.

1. Chapman contends that the trial court erred by granting summary judgment to Color Xpress because the personal guarantee fails to satisfy the Statute of Frauds.

> As the Supreme Court explained, under the Statute of Frauds and cases applying the Statute, a promise to answer for another's debt is only enforceable against the promisor if it identifies the debt, the principal debtor, the promisor, and the promisee. It is well settled that a guaranty must identify the principal debtor by name. [If] a guaranty omits the name of the principal debtor, of the promisee, or of the promisor, the guaranty is unenforceable as a matter of law. Even where the intent of the parties is manifestly obvious, where any of these names is omitted from the document, the agreement is not enforceable because it fails to satisfy the Statute of Frauds. Moreover, a court must strictly construe an alleged guaranty contract in favor of the guarantor. The guarantor's

---

[3] The notice of appeal filed by Chapman and Community Magazine asked for inclusion of the transcript of the proceedings; however, no such transcript was filed with this Court, and the trial court's order does not reference a hearing.

4

liability may not be extended by implication or interpretation. And parol evidence is not admissible to supply any missing essential elements of a contract required to be in writing by our Statute of Frauds. Thus, this Court is not authorized to determine the identity of the principal debtor, of the promisee, or of the promisor by inference as this would entail consideration of impermissible parol evidence.[4]

Color Xpress failed to establish facts supporting the trial court's determination that Chapman had executed a valid personal guarantee. The only evidence presented to satisfy the requirements under the Statute of Frauds consisted of the one-page document titled "Authorization to Obtain Bank Credit Information." The document does not identify who the principal debtor is,[5] and the only statement of liability by Chapman was for the "above purchaser," which could only mean Color Xpress (not Community Magazine) based on the information listed in the document. Moreover, while the purported guaranty referenced a "Credit Application" and "above agreement," the only agreement contained in the record was one authorizing Color Xpress to obtain bank credit information. Accordingly, the trial court erred by

---

[4] (Citations and punctuation omitted.) *Legacy Communities Group v. Branch Banking & Trust Co.*, 316 Ga. App. 496, 498 (729 SE2d 612) (2012), quoting *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570, 572-573 (694 SE2d 161) (2010).

[5] See *Legacy Communications Group*, 316 Ga. App. at 498.

granting summary judgment to Color Xpress against Chapman based on the record evidence, and the judgment is reversed as to Chapman.[6]

2. Community Magazine contends that the trial court erred by granting summary judgment against them because there is a material issue of fact as to the appropriate balance due. We disagree.

"A suit on open account is available as a simplified procedure to the provider of goods and services where the price of such goods or services has been agreed upon and where it appears that the plaintiff has fully performed its part of the agreement and nothing remains to be done except for the other party to make payment."[7]

Color Xpress presented Motter's affidavit and the supporting documents for its allegation that Community Magazine owed Color Xpress $89,842.33 not including finance charges. Community Magazine's answer was not verified, and it failed to

---

[6] Color Xpress relies on *R.J. Griffin & Co. c. Continental Ins.*, 230 Ga. App. 822, 823 (497 SE2d 586) (1998), for the legal premise that "no construction of a surety's bond is 'required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation.'" But this does not change our determination as the plain language of the document establishes no enforceable personal guarantee on the part of Chapman for any debts of Community Magazine.

[7] (Punctuation omitted.) *Five Star Steel Constr. v. Klockner Namasco Corp.*, 240 Ga. App. 736, 738-739 (1) (c) (524 SE2d 783) (1999).

provide specific evidence or legal argument challenging the amount of the debt owed.[8] Accordingly, Color Xpress established a prima facie case, and the trial court did not err by granting its motion for summary judgment.

3. The defendants contend that the trial court erred by granting summary judgment to Color Xpress because no such entity exists. In this case, the defendants failed to raise before the trial court the issue of Color Xpress's existence as a legal entity capable of bringing suit, but in its brief on appeal, Color Xpress admits that it is the trade name of a sole proprietorship.

Relying on *Brand v. Southern Employment Svcs.*,[9] *Russell v. O'Donnell*,[10] and *Western & Atlantic R. Co. v. Dalton Marble Works*,[11] addressing the issue of whether a suit effectuated under a trade name is a "nullity," the defendants contend that we should reverse the trial court's order granting summary judgment and direct the court to dismiss the non-existent action.

---

[8] See *Traditional Properties, Inc. v. Performance Food Group of Ga.*, 291 Ga. App. 442, 443 (662 SE2d 250) (2008).

[9] 247 Ga. App. 638, 638-639 (545 SE2d 67) (2001).

[10] 132 Ga. App. 294, 296 (2) (208 SE2d 107) (1974).

[11] 122 Ga. 774 (50 SE 978) (1905).

Pursuant to OCGA § 9-11-10 (a), "[i]n the complaint the title of the action shall include the names of all the parties . . . ." Nevertheless, "[i]t is not necessary to aver the capacity of a party to bring or defend an action, the authority of a party to bring or defend an action in a representative capacity, or the legal existence of an organized association of persons that is made a party."[12]

In *Johnson & Johnson Constr. Co. v. Pioneer Neon Supply Co.*,[13] this Court explained that "[a] petition brought in the trade[]name of an individual may be amended by stating the real or true name of the person who purports to carry on the business to which the allegations of the petition relate; and the amendment does not state a new cause of action, or introduce a new party[,]"[14] despite oft cited general language from *Dalton Marble Works* that

> [i]f the suit is brought in a name which is neither that of a natural person, a corporation, nor a partnership, it is a mere nullity. A natural person may bring a suit in his name for himself, or for the use of any other person when he holds the legal title and such other person the equitable title. A corporation may bring suit in its own name, and, if it

---

[12] OCGA § 9-11-9 (a).

[13] 96 Ga. App. 867 (101 SE2d 918) (1958).

[14] (Punctuation omitted.) Id. at 868, quoting *Hudgins Contracting Co. v. Redmond*, 178 Ga. 317 (2) (173 SE 135) (1934).

8

fails fully to describe its legal entity, may amend by alleging that it is a corporation. A partnership may do likewise.[15]

This language has been used in later cases to hold that actions filed under a trade name were mere nullities and therefore subject to dismissal unless the trade name appeared on its face to be a corporate entity even if the trade name was used by a sole proprietor doing business under the apparently corporate name.[16]

After the passage of the Civil Practice Act in 1966, the Georgia Supreme Court revisited this issue in *Block v. Voyager Life Ins. Co.*[17] In that case, the Court

---

[15] 122 Ga. at 775.

[16] See *Brand*, 247 Ga. App. at 639 (holding that "Southern Employment Service" did not import a legal entity when true party was a "proprietorship owned by Millard Burke"); *Cook v. Computer Listings*, 137 Ga. App. 526 (224 SE2d 501) (1976) (holding that "Computer Listings" did not import a legal entity when true party was "Paul Boland, Partner in Computer Listings"); *Russell*, 132 Ga. App. at 294 (holding that "Ansley Forest Apartments" did not import a legal entity when true party was "J. W. O'Donnell d/b/a Ansley Forest"). But see *Powell v. Ferguson Tile &c. Co.*, 125 Ga. App. 683 (188 SE2d 901) (1972) (holding that "Ferguson Tile & Terrazzo Company" did import a legal entity, even though that true party was not a corporation, but rather "Robert H. Ferguson, d/b/a Ferguson Tile & Terrazzo Company"); *Johnson & Johnson Contr. Co.*, 96 Ga. App. at 868 (2) (holding that "Pioneer Neon Supply Company" did import a legal entity, even though the true party was not a corporation, but rather a sole proprietorship operating under the trade name).

[17] 251 Ga. 162 (1) (303 SE2d 742) (1983).

addressed the issue of "whether under the Civil Practice Act, . . . the pleadings may be amended to substitute a named party plaintiff when suit is filed in the name of a party which is not a legal entity."[18] The Supreme Court noted that prior case law held that such suits were "mere nullit[ies]."[19] Implicitly disapproving this language, the Court in *Block* held that if

> the party plaintiff named in a complaint is not a legal entity but is reasonably recognizable as a misnomer for a legal entity which is the real party plaintiff, the misnomer may be corrected by amendment. Additionally, a mere misnomer of a party in the pleadings is a defect which may be waived where the misnamed party is in fact the legally cognizable proper party in interest.[20]

In this case, "Color Xpress" is the trade name utilized by a sole proprietorship, and the name is used in the documents between the parties. The sole proprietor is the legally cognizable proper party in interest and could have been substituted as the

---

[18] Id. at 162.

[19] Id. at 162 (1).

[20] Id. at 163 (1). See also OCGA § 9-11-10 (a) ("[w]hen a party desires to raise an issue as to the legal existence of any party, the capacity of any party to bring or defend an action, or the authority of a party to bring or defend an action in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.").

10

named plaintiff had the defendants properly raised this issue below.[21] In addition to meeting the "liberal policies" of the Civil Practice Act,[22] this holding is also in harmony with the principle regarding trade names that "if one undertakes an obligation in a fictitious or trade name, the obligation is his own individually."[23] To the extent that *Brand* would appear to suggest an alternative holding, we note in that case, the defendant objected before the trial court based on the plaintiff's incorrect name, which did not occur in this case.[24]

Accordingly, this enumeration does not require reversal.

4. Based on our holding in Division 1 of this opinion, we need not address Chapman's remaining enumeration.

---

[21] See *Block*, 251 Ga. at 163 (1); *Haynes v. Armour Fertilizer Works*, 146 Ga. 832, 834-835 (92 SE 648) (1917); *Clark Brothers v. Wyche*, 126 Ga. 24, 26 (54 SE2d 909) (1906).

[22] See *Block*, 251 Ga. App. at 163 (1).

[23] See *American Express &c. Co. v. Berlye*, 202 Ga. App. 358, 360 (1) (414 SE2d 499) (1991) ("The use of a trade name does not create a separate legal entity, and if one undertakes an obligation in a fictitious or trade name, the obligation is his own individually.").

[24] 247 Ga. App. at 639 (relying on pre-*Block* cases). See also OCGA § 9-11-10 (a).

*Judgment affirmed in part and reversed in part. McFadden and Boggs, JJ.,*
*concur.*