**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 31, 2017**

# In the Court of Appeals of Georgia

A17A0391. LYNCHAR, INC. et al. v. COLONIAL OIL INDUSTRIES, INC.

SELF, Judge.

Colonial Oil Industries, Inc. ("Colonial") filed the instant suit on an account against Lynchar, Inc. d/b/a T&W Oil Company ("Lynchar") and two of its shareholders, Lawrence M. Derby, Sr. and Charles G. Thompson, Jr. (collectively, "appellants"), alleging that appellants owed $1,406,194.61 in principal, plus interest, on an open account for the sale and delivery of fuel products and other goods by Colonial. Colonial alleged that Derby and Thompson signed personal guaranties for the debts of Lynchar and were therefore liable for the same. The trial court entered an order granting Colonial's motion for partial summary judgment and denying

appellants' motion for partial summary judgment. Appellants appeal both rulings. For the reasons that follow, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Footnote omitted.) *Community Magazine v. Color Xpress*, 326 Ga. App. 330 (756 SE2d 564) (2014). So viewed, the record reflects that Colonial entered into an account agreement with Lynchar whereby Colonial would sell and deliver fuel products and other goods. A "New Account Data Sheet" signed December 10, 1986, lists "Lynchar Inc. d/b/a T&W Oil Co." as the billing name on the account. An updated "Account Data Sheet and Agreement" signed August 18, 1997, lists "T&W Oil Co." as the billing name on the account. The signature block of the 1997 agreement lists the "Company Name" as "T&W Oil." In 2007 and 2008, Thompson and Derby executed personal guaranties. Both guaranties identify Colonial as the "Holder" and T&W Oil, Inc. as the "Debtor," and Derby's guaranty provides as follows:

2

On this the 23[rd] day of April, 2008[,] in consideration of and as inducement for Colonial Oil Industries, Inc. (hereinafter, "Colonial" or "Holder") to sell product to T&W Oil, Inc. ("Debtor" or "Borrower") on credit or delayed payment terms, to extend to Debtor existing or new credit or indebtedness, and/or to otherwise assume a credit risk with respect to Debtor whereby Debtor will owe to Colonial money, each of the undersigned guarantors (hereinafter, collectively and individually a "Guarantor") do hereby agree, jointly and severally, as follows:

1. Guarantor hereby unconditionally and absolutely guarantees to the Holder the full and prompt payment, when due, of all of the "Obligations." "Obligations" shall mean and include all indebtedness and liability of whatsoever nature of the Borrower to the Holder. . . together with any and all costs and expenses of and incidental to the collection any of the foregoing or the enforcement of this Guaranty, including, but not limited to, reasonable [attorney] fees and costs and expenses of litigation generally.

. . .

16. . . . In the event Guarantor breaches this Guaranty, then Guarantor shall pay to Holder all costs of the Holder in enforcing this Guaranty and collection of the Liabilities, including but not limited to reasonable [attorney] fees and the costs and expenses of litigation. . . .

Thompson and Derby are shareholders in Lynchar, Inc., and both aver that they have never been associated with an entity known as "T&W Oil, Inc."

When Lynchar failed to meet its obligations under the agreements, Colonial sued appellants asserting claims for breach of the account agreement, promissory estoppel, breach of both guaranties, and attorney fees. The complaint alleged as follows:

> Pursuant to an agreement with Defendant T&W Oil and personal guaranty agreements with Defendant Lawrence M. Derby, Sr. and Defendant Charles G. Thompson, Jr., Plaintiff sold and delivered fuel products and other goods to Defendant T&W Oil on account. The outstanding balance on this account for product sold is $1,406,194.61 plus interest.

> Defendant. . . Derby. . . signed a Guaranty Agreement through which he bound himself to be personally liable for any amounts owed Plaintiff by Defendant T&W Oil. . . .

> Defendant. . . Thompson. . . signed a Guaranty Agreement through which he bound himself to be personally liable for any amounts owed Plaintiff by Defendant T&W Oil. . . .

Appellants filed an answer, admitting these allegations, but disputing the amount owed. . In an amended answer, appellants later denied these allegations and raised a new affirmative defense based on the Statute of Frauds. Thereafter, appellants moved for partial summary judgment on Colonial's claims for breach of the guaranties and

attorney fees, arguing that the guaranties were not enforceable because they failed to identify the correct principal debtor, Lynchar, Inc.

In the meantime, Colonial amended its complaint to include a claim for fraud.[1] Colonial also moved for partial summary judgment on all of its remaining claims with the exception of its claim for promissory estoppel. In support of its contention that summary judgment was proper, Colonial pointed to appellants' admissions in their original answer as well as various emails between Derby as "President of T&W Oil Company" and Colonial's credit manager evincing Lynchar's inability to satisfy its payment obligations as well as its desire to continue doing business with Colonial and pay off its account "in full." Colonial also pointed to Derby's deposition testimony and Lynchar's federal tax return in support of its motion. During his deposition, Derby confirmed that the 2011 federal tax return listed the corporate name as "LYNCHAR, INC. D/B/A T&W OIL COMPANY, INC." Regarding the guaranty, Derby testified as follows:

---

[1] As amended, the complaint alleged the following claims: breach of the account agreement (count I); promissory estoppel (count II); breach of Derby guaranty (count III); breach of Thompson guaranty (count IV); fraud (count V); and attorney fees (count VI). After Colonial amended its complaint, appellants amended their motion for partial summary judgment to include Colonial's claim for fraud. The trial court granted summary judgment to appellants on the fraud claim.

Q: What was your understanding of what this document, this guaranty, was supposed to do?
A: Personal guaranty, you know, for the debt.
Q: And what does that mean?
A: That I'd be held responsible.
Q: And what debt were you going to be personally responsible for?
A: From Colonial.
Q: Whose debt were you covering personally?
A: It would be Lynchar.
Q: Okay. Lynchar doing business as –
A: T&W Oil.
Q: Okay. The document refers to T&W Oil, Inc. Do you see that?
A: [. . . ] Okay, I see it now.
Q: Why is that name in there?
A: I'm not sure.
Q: Well, is that a correct name of whose debt you were going to guaranty?
A: No, ma'am. We don't go by that name.
Q: Okay. Did you tell Colonial that that was not the proper name?
A: No, ma'am.
Q: Was it your intent to deceive Colonial at that point?
A: No ma'am.
Q: Okay. So in fact, you wanted Colonial to rely upon this [guaranty] in providing you fuel products?
A: Right. Yes ma'am.

Derby further testified that he understood that the guaranty he signed "was to guaranty the debt of T&W Oil Company to Colonial Oil" and that he would be "personally responsible" for that debt.

Appellants objected to Colonial's reliance on parol evidence to construe the unambiguous guaranties. Following a hearing on the cross-motions for partial

6

summary judgment, the trial court overruled appellants' objection and granted Colonial's partial motion for summary judgment; the trial court contemporaneously denied appellants' partial motion for summary judgment. The trial court ruled that appellants admitted the debt and that Colonial established a prima facie right to judgment on its breach of contract claim. Based on the evidence recounted above, the trial court also ruled that the guaranties were enforceable even though they identified the debtor as "T&W Oil, Inc." instead of "Lynchar" or "T&W Oil Company" because Derby and Thompson admitted the interchangeable nature of the names and that under *L. Henry Enterprises v. Verifone, Inc.*, 273 Ga. App. 195 (614 SE2d 841) (2005), parol evidence was admissible to explain ambiguities in descriptions. Finding that the account agreement and guaranties provided for attorney fees, the trial court also granted summary judgment to Colonial on its claim for attorney fees. In its order, the trial court reserved for later determination the issue of damages. Appellants appeal the trial court's rulings as to Colonial's claims for breach of the guaranties and attorney fees.[2]

---

[2] Appellants have not appealed the trial court's grant of summary judgment to Colonial on its claim for breach of the account agreement.

1. In five somewhat overlapping enumerations, appellants contend that the trial court erred in granting partial summary to Colonial on the guaranties because (1) the guaranties are unambiguous and (2) parol evidence is not admissible to interpret an unambiguous contract. According to appellants, the guaranties identify the principal debtor as "T&W Oil, Inc.," which is not a legally existing entity. Appellants contend that the guaranties here are identical to the one in *PlayNation Play Systems v. Jackson*, 312 Ga. App. 340 (718 SE2d 568) (2011), which we found unenforceable because it failed to reference the corporate debtor. Appellants assert that *PlayNation* requires that we reverse the trial court's order. Colonial disagrees, contending that *PlayNation* is distinguishable and that this case is controlled by *L. Henry*, supra. We agree with appellants.

"The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another. . . . " OCGA § 10-7-1. Moreover, "[a] personal contract of guaranty must be in writing and must satisfy all of the requisites of the [S]tatute of [F]rauds, OCGA § 13-5-30 (2)." *Sysco Food Svcs. v. Coleman*, 227 Ga. App. 460, 461 (489 SE2d 568) (1997). As we reiterated in *Community Magazine*, supra,

8

under the Statute of Frauds and cases applying the Statute, a promise to answer for another's debt is only enforceable against the promisor if it identifies the debt, the principal debtor, the promisor, and the promisee. It is well settled that a guaranty must identify the principal debtor by name. If a guaranty omits the name of the principal debtor, of the promisee, or of the promisor, the guaranty is unenforceable as a matter of law. Even where the intent of the parties is manifestly obvious, where any of these names is omitted from the document, the agreement is not enforceable because it fails to satisfy the Statute of Frauds. Moreover, a court must strictly construe an alleged guaranty contract in favor of the guarantor. The guarantor's liability may not be extended by implication or interpretation. And parol evidence is not admissible to supply any missing essential elements of a contract required to be in writing by our Statute of Frauds. Thus, this Court is not authorized to determine the identity of the principal debtor, of the promisee, or of the promisor by inference as this would entail consideration of impermissible parol evidence.

(Punctuation and footnotes omitted.) 326 Ga. App. at 332 (1). See *Legacy Communities Group v. Branch Banking & Trust*, 316 Ga. App. 496, 497 (729 SE2d 612) (2012) ("It is well settled that a guaranty must identify the principal debtor *by name.")* (emphasis in original). See also *Builder's Supply Corp. v. Taylor*, 164 Ga. App. 127, 128 (296 SE2d 417) (1982) (guaranty which omitted name of principal debtor, but which defendants admitted to executing, did not satisfy the Statute of

9

Frauds and was, therefore, unenforceable; parol evidence inadmissible to "supply. . . description which is entirely wanting in the writing") (citation and punctuation omitted).

In *PlayNation*, the owner of The Bottom Line, a limited liability corporation, in the business of selling and installing children's swing sets, entered into a dealership agreement with a swing set manufacturer. One month after signing the agreement, the owner signed a guaranty for the debts of "Swing Set Planet." The guaranty named only "Swing Set Planet," The Bottom Line's fictitious name or d/b/a designation, without any reference to The Bottom Line or other legal entity it was describing. The owner subsequently changed The Bottom Line's fictitious name to "PlayNation Parties and Playgrounds" and then failed to make payments on outstanding invoices. The manufacturer sued for breach of the guaranty and the trial court granted the owner's motion for summary judgment, ruling that he could not be held responsible for the debt of PlayNation Parties because the debtor listed on the guaranty was Swing Set Planet. We affirmed, rejecting the manufacturer's argument that the owner promised to pay the debts of The Bottom Line, and finding that the guaranty named only the fictitious name or d/b/a designation, without any reference to a corporation or other legal entity. Because the guaranty named only Swing Set

10

Planet, we concluded that the owner was, therefore, not obligated to guarantee the debt of The Bottom Line or PlayNation Parties: "To hold otherwise would extend a guarantor's liability by implication or interpretation – an act forbidden to the courts." *PlayNation*, supra, 312 Ga. App. at 342. Compare *American Express Travel Related Svcs. v. Berlye*, 202 Ga. App. 358, 360 (1) (414 SE2d 499) (1991) (guaranty enforceable where change in d/b/a designation did not alter fact that guaranty named the corporation as the agent).

We find the rationale in *PlayNation* to be dispositive of the issue here. In *PlayNation*, the guaranty was unenforceable not because the d/b/a name changed, but because the guaranty failed to designate the corporate debtor. In this case, as in *PlayNation*, the guaranties do not reference the corporate debtor, but, rather, reference Lynchar's d/b/a designation, T&W Oil, Inc. "The use of d/b/a or 'doing business as' to associate a tradename with the corporation using it does not create a legal entity separate from the corporation but is merely descriptive of the corporation." *Berlye*, supra, 202 Ga. App. at 360 (1). We did not find any ambiguity in the defect at issue in *PlayNation*, and we find similarly in this case. Where a defect cannot be treated as an ambiguity, judicial construction of the contract of guaranty is improper and parol evidence is inadmissible to cure the defect. See *Sysco Food*,

11

supra, 227 Ga. App. at 462. Strictly construing the guaranties here, we cannot conclude that Derby and Thompson were obligated to guarantee the debt of the corporation, Lynchar, Inc. Accordingly, the trial court erred in granting summary judgment to Colonial on its claims under the guaranties.

Colonial's assertion that the guaranties here are ambiguous and that *L. Henry*, supra, and not *PlayNation*, controls this case is incorrect. In *L. Henry*, the corporate maker's name on the note and guaranty differed slightly and we affirmed the trial court's consideration of parol evidence to explain the ambiguity. Because the defendant in *L. Henry* signed the guaranty contemporaneously with a note which had the correct corporate name, our decision was based on the "contemporaneous writing" rule. *L. Henry*, supra, 273 Ga. App. at 198 (2). See OCGA § 24-3-3 (a). See also *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452 (471 SE2d 537) (1996) (where guaranty was executed at the same time and in the course of the same transaction as a loan and security agreement and a stock pledge agreement, the three documents could be read and construed together under the contemporaneous writing rule, OCGA § 24-3-3 (a), formerly OCGA § 24-6-3 (a), to determine the identity of the principal debtor). Because the account agreement in this case had been in effect years before

the guaranties were executed, the "contemporaneous writing" rule does not apply and *L. Henry* is inapposite.

2. Relying on *Citrus Tower Boulevard Imaging Center v. Owens*, 325 Ga. App. 1 (752 SE2d 74) (2013), appellants contend in their third enumeration of error that the trial court erred in considering their withdrawn admissions. We agree.

OCGA § 24-8-821 provides that "[w]ithout offering the same in evidence, either party may avail himself or herself of allegations or admissions made in the pleadings of the other."

> Under OCGA § [24-8-821, formerly 24-3-30], admissions in judicio in a party's pleadings bind the party so that they cannot put up evidence over objection to contradict such admissions. However, if the party amends its pleadings to withdraw the admissions, it may then introduce evidence contravening the admissions. If such contradictory evidence is admitted, even over the objection of the other party, then under OCGA § 9-11-15 (b), such evidence may be deemed to amend the pleadings to withdraw the admissions.

(Punctuation and footnotes omitted.) *SAKS Assoc. v. Southeast Culvert*, 282 Ga. App. 359, 364 (2) (638 SE2d 799) (2006). "Even so, the other party may rely on the original admission as evidence." *Citrus Tower*, supra, 325 Ga. App. at 4 (1). As we noted in *Citrus Tower*,

13

[i]n other words, although a party may withdraw or strike from the pleadings an admission in judicio by amendment and tender evidence to contravene such admission, the opposite party can tender in evidence the original admission in judicio against such party as an admission against interest. Even after its withdrawal, an opposing party undeniably has a right to use it as evidence.

(Punctuation and footnote omitted.) Id. *Citrus Tower* makes it clear, however, that

an admission in judicio applies only to the admission of fact and does not apply where the admission is merely the opinion or conclusion of the pleader as to law or fact. Thus, where the admission is simply an opinion on the part of the party making it as to the legal effect of a paper, the withdrawn admission is not a fact that can be taken advantage of by the opposing party.

(Punctuation and footnotes omitted.) Id.

Here, Colonial argued, and the trial court agreed, that Colonial was entitled to recover under the guaranties because both Derby and Thompson admitted in the original answer to entering into personal guaranties with Colonial making them personally liable for any amounts owed Colonial by "T&W Oil." Appellants subsequently withdrew this answer, however, and admitted that "Colonial had an agreement with, and sold and delivered fuel products and other goods to, Defendant Lynchar, Inc. d/b/a T&W Oil Company on account." Appellants denied the amount

14

owed and also denied that Derby and Thompson "signed. . . Guaranty Agreement[s] through which [they] bound [themselves] to be personally liable for any amounts owed Plaintiff by Defendant T&W Oil." Appellants urge us to follow our reasoning in *Citrus Tower* and find that the withdrawn admissions go to the legal effect of the guaranties – not to any factual issue – which Colonial cannot use to its advantage. We agree that *Citrus Tower* controls the issue here.

In *Citrus Tower*, the plaintiff sued for breach of a lease and sought to recover against the defendant in his personal capacity to recover rent and other amounts under a guaranty signed by the defendant. The defendant admitted in his original answer to executing the guaranty whereby he guaranteed payment of all sums owing under a lease. In an amended answer, the defendant later denied those allegations. The trial court granted summary judgment to the defendant, presumably finding that the defendant had executed the guaranty as a representative of his professional corporation and not in his personal capacity. This Court affirmed, finding that "[defendant's] admission that he 'executed' the Guaranty may demonstrate that he *signed* the Guaranty, but that fact is undisputed and in itself does not create a genuine issue of material fact as to whether [defendant] was personally bound by it." *Citrus Tower*, supra 325 Ga. App. at 5 (1). Similarly, in this case, the trial court erred in

relying on the withdrawn admissions because those admissions went to the legal effect of the guaranties and were not evidence of whether the written guaranties complied with the Statute of Frauds or the requirement that the debtor be identified.

3. Finally, appellants contend that because the guaranties are unenforceable, the trial court erred in granting summary judgment to Colonial on its claim for attorney fees. Given our finding that the guaranties are unenforceable, it follows that the trial court erred in granting summary judgment to Colonial on its claim for attorney fees under the guaranties.[3]

Given the foregoing, we conclude that the trial court erred in granting Colonial's motion for partial summary judgment on counts III, IV, and VI, and in denying appellants' motion for partial summary judgment on those same counts.

*Judgment reversed. Dillard, P. J., and Ray, J., concur.*

---

[3] We render no opinion as to whether Colonial is entitled to attorney fees under any other theory or claim for relief.