303 Ga. 839
FINAL COPY

S17G1788. COLONIAL OIL INDUSTRIES, INC. v. LYNCHAR, INC. et al.

MELTON, Presiding Justice.

In Lynchar, Inc. v. Colonial Oil Industries, Inc., 341 Ga. App. 489 (801 SE2d 576) (2017), the Court of Appeals found that certain individual guaranties of Lynchar, Inc.'s debt to Colonial Oil Industries, Inc. were unenforceable under Georgia's Statute of Frauds. See OCGA § 13-5-30. Specifically, the Court of Appeals held that the guaranties were unenforceable because they do not reference the legal name of the corporate debtor ("Lynchar, Inc. d/b/a T & W Oil Company"), but instead reference only the corporate debtor's trade name ("T&W Oil, Inc."). We granted a petition for certiorari filed by Colonial Oil and posed two questions: (1) To what extent does a misnomer or other defect in the identification of the principal debtor render a contract of suretyship or guaranty unenforceable? PlayNation Play Systems, Inc. v. Jackson, 312 Ga. App. 340 (718 SE2d 568) (2011); (2) Did the Court of Appeals err in holding that the guaranties sought to be enforced against appellees are unenforceable? For the

reasons set forth below, we reverse.

1. The facts of this case, which are largely undisputed, were exhaustively recounted by the Court of Appeals as follows:

Colonial entered into an account agreement with Lynchar whereby Colonial would sell and deliver fuel products and other goods. A "New Account Data Sheet" signed December 10, 1986, lists "Lynchar Inc. d/b/a T&W Oil Co." as the billing name on the account. An updated "Account Data Sheet and Agreement" signed August 18, 1997, lists "T&W Oil Co." as the billing name on the account. The signature block of the 1997 agreement lists the "Company Name" as "T&W Oil." In 2007 and 2008, [Charles G.] Thompson[, Jr.] and [Lawrence M.] Derby[, Sr.] executed personal guaranties. Both guaranties identify Colonial as the "Holder" and T&W Oil, Inc., as the "Debtor," and Derby's guaranty provides as follows:

On this the 23rd day of April, 2008[,] in consideration of and as inducement for Colonial Oil Industries, Inc. (hereinafter, "Colonial" or "Holder") to sell product to T&W Oil, Inc. ("Debtor" or "Borrower") on credit or delayed payment terms, to extend to Debtor existing or new credit or indebtedness, and/or to otherwise assume a credit risk with respect to Debtor whereby Debtor will owe to Colonial money, each of the undersigned guarantors (hereinafter, collectively and individually a "Guarantor") do hereby agree, jointly and severally, as follows:

1. Guarantor hereby unconditionally and absolutely guarantees to the Holder the full and prompt payment, when due, of all of the "Obligations." "Obligations" shall mean and include all indebtedness and liability of whatsoever nature of the Borrower to the Holder . . . together with any and all costs and expenses of and incidental to the collection any of the foregoing or the enforcement of this Guaranty, including, but

2

not limited to, reasonable [attorney] fees and costs and expenses of litigation generally.

. . .

16. . . . In the event Guarantor breaches this Guaranty, then Guarantor shall pay to Holder all costs of the Holder in enforcing this Guaranty and collection of the Liabilities, including but not limited to reasonable [attorney] fees and the costs and expenses of litigation. . . .

Thompson and Derby are shareholders in Lynchar, Inc., and both aver that they have never been associated with an entity known as "T&W Oil, Inc."

When Lynchar failed to meet its obligations under the agreements, Colonial sued [the guarantors] asserting claims for breach of the account agreement, promissory estoppel, breach of both guaranties, and attorney fees. The complaint alleged as follows:

Pursuant to an agreement with Defendant T & W Oil and personal guaranty agreements with Defendant Lawrence M. Derby, Sr. and Defendant Charles G. Thompson, Jr., Plaintiff sold and delivered fuel products and other goods to Defendant T & W Oil on account. The outstanding balance on this account for product sold is $1,406,194.61 plus interest.

Defendant . . . Derby . . . signed a Guaranty Agreement through which he bound himself to be personally liable for any amounts owed Plaintiff by Defendant T & W Oil. . . .

Defendant . . . Thompson . . . signed a Guaranty Agreement through which he bound himself to be personally liable for any amounts owed Plaintiff by Defendant T & W Oil. . . .

[The guarantors] filed an answer, admitting these allegations, but disputing the amount owed. In an amended answer, [the guarantors] later denied these allegations and raised a new affirmative defense based on the Statute of Frauds. Thereafter, [guarantors] moved for

3

partial summary judgment on Colonial's claims for breach of the guaranties and attorney fees, arguing that the guaranties were not enforceable because they failed to identify the correct principal debtor, Lynchar, Inc.

In the meantime, Colonial amended its complaint to include a claim for fraud. Colonial also moved for partial summary judgment on all of its remaining claims with the exception of its claim for promissory estoppel. In support of its contention that summary judgment was proper, Colonial pointed to [the guarantors'] admissions in their original answer as well as various e-mails between Derby as "President of T&W Oil Company" and Colonial's credit manager evincing Lynchar's inability to satisfy its payment obligations as well as its desire to continue doing business with Colonial and pay off its account "in full." Colonial also pointed to Derby's deposition testimony and Lynchar's federal tax return in support of its motion. During his deposition, Derby confirmed that the 2011 federal tax return listed the corporate name as "LYNCHAR, INC. D/B/A T&W OIL COMPANY, INC." Regarding the guaranty, Derby testified as follows:

Q: What was your understanding of what this document, this guaranty, was supposed to do?
A: Personal guaranty, you know, for the debt.
Q: And what does that mean?
A: That I'd be held responsible.
Q: And what debt were you going to be personally responsible for?
A: From Colonial.
Q: Whose debt were you covering personally?
A: It would be Lynchar.
Q: Okay. Lynchar doing business as —
A: T&W Oil.
Q: Okay. The document refers to T&W Oil, Inc. Do you see that?
A: [. . . ] Okay, I see it now.
Q: Why is that name in there?

4

A: I'm not sure.

Q: Well, is that a correct name of whose debt you were going to guaranty?

A: No, ma'am. We don't go by that name.

Q: Okay. Did you tell Colonial that that was not the proper name?

A: No, ma'am.

Q: Was it your intent to deceive Colonial at that point?

A: No ma'am.

Q: Okay. So in fact, you wanted Colonial to rely upon this [guaranty] in providing you fuel products?

A: Right. Yes ma'am.

Derby further testified that he understood that the guaranty he signed "was to guaranty the debt of T&W Oil Company to Colonial Oil" and that he would be "personally responsible" for that debt.

[The guarantors] objected to Colonial's reliance on parol evidence to construe the unambiguous guaranties. Following a hearing on the cross-motions for partial summary judgment, the trial court overruled [the guarantors'] objection and granted Colonial's partial motion for summary judgment; the trial court contemporaneously denied [the guarantors'] partial motion for summary judgment. The trial court ruled that [the guarantors] admitted the debt and that Colonial established a prima facie right to judgment on its breach of contract claim. Based on the evidence recounted above, the trial court also ruled that the guaranties were enforceable even though they identified the debtor as "T&W Oil, Inc.," instead of "Lynchar" or "T&W Oil Company" because Derby and Thompson admitted the interchangeable nature of the names and that under L. Henry Enterprises v. Verifone, Inc., 273 Ga. App. 195 (614 SE2d 841) (2005), parol evidence was admissible to explain ambiguities in descriptions. Finding that the account agreement and guaranties provided for attorney fees, the trial court also granted summary judgment to Colonial on its claim for attorney fees. In its order, the trial court reserved for later determination the issue of damages. [The guarantors then]

5

appeal[ed] the trial court's rulings as to Colonial's claims for breach of the guaranties and attorney fees.

(Footnotes omitted.) Id. at 489-492.

Citing PlayNation, supra, the Court of Appeals reversed, finding that the guaranties were unenforceable because they identified the principal debtor by only its trade name. This holding is misplaced.

2. Georgia's Statute of Frauds provides that "[t]o make the following obligations binding on the promisor, the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him: . . . A promise to answer for the debt, default, or miscarriage of another . . . ." OCGA § 13-5-30 (2). In other words, the Statute of Frauds

> requires that a promise to answer for another's debt, to be binding on the promisor, "must be in writing and signed by the party to be charged therewith." OCGA § 13-5-30 (2). See Schroeder v. Hunter Douglas, Inc., 172 Ga. App. 897, 898 (2) (324 SE2d 746) (1984). This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee. [Id.]; Roach v. C.L. Wigington Enterprises, 246 Ga. App. 36, 37 (539 SE2d 543) (2000).

John Deere Co. v. Haralson, 278 Ga. 192, 193 (599 SE2d 164) (2004). See also Tampa Investments Group, Inc. v. Branch Banking & Trust Co., 290 Ga. 724, 728 (2) (723 SE2d 674) (2012). We have further explained that,

6

[i]n Georgia, guaranty agreements are to be construed strictly, "and the surety's liability will not be extended by implication or interpretation." OCGA § 10-7-3. As with other contracts, the construction of a guaranty agreement is a question of law that we review de novo. Unified Gov't of Athens-Clarke Cty. v. Stiles Apts., 295 Ga. 829, 832 (1) (764 SE2d 403) (2014).

York v. RES-GA LJY, LLC, 300 Ga. 869, 871 (2) (799 SE2d 235) (2017). "The statute of frauds is 'for the prevention of frauds and perjuries.' [Cit.]" John Deere Co., supra, 278 Ga. at 194, n. 2.

With this background in mind, the main question in the present case is whether the identification in a guaranty of the principal debtor by only its trade name is sufficient to make such a guaranty enforceable.[1] We answer that question affirmatively.

It has repeatedly been held by the Court of Appeals that

[a] trade name is merely a name assumed or used by a person recognized as a legal entity. A judgment against one in an assumed or trade name is a judgment against him as an individual. An undertaking by an individual in a fictitious or trade name is the obligation of the individual.

(Punctuation and footnote omitted.) Auto-Owners Ins. Co. v. Tracy, 344 Ga.

---

[1] This assumes that there are no other defects of any kind in the guaranty.

7

App. 53, 55 (1) (806 SE2d 653) (2017). See also Crolley v. Haygood Contracting, 201 Ga. App. 700 (3) (411 SE2d 907) (1991); John L. Hutcheson Memorial Tri-County Hosp. v. Oliver, 120 Ga. App. 547 (1) (171 SE2d 649) (1969) ("A corporation conducting business in a trade name may sue or be sued in the trade name.") (Citations omitted.) Therefore, as a general matter, the use of a trade name does not shield the individual or entity using that name from the legal agreements into which that individual or entity enters. See Miller v. Harco Nat. Ins. Co., 274 Ga. 387, 391 (3) (552 SE2d 848) (2001).

In addition, there is nothing in the Statute of Frauds which provides a reason to alter this general rule. To the contrary, allowing a party to avoid a guaranty obligation he knowingly undertook simply because another party used a trade name, despite the fact that all parties to the agreement knew to whom the trade name referred, would undercut the purpose of the Statute of Frauds. The Statute of Frauds is intended to prevent fraud and perjuries, not shield or enable them. John Deere Co., supra.

Nonetheless, in PlayNation, supra, the Court of Appeals, with limited analysis, set forth the notion that a guaranty in which the principal debtor is identified only by its trade name is unenforceable. The Court of Appeals

8

reasoned that "[t]o hold otherwise would extend a guarantor's liability by implication or interpretation — an act forbidden to the courts." Id. at 342. But enforcing such a guaranty does neither, as there is, in fact, no extension of the guarantor's liability to any party to which the guarantor did not intend to be liable. The party whose debt the guarantor intends to guarantee is explicitly stated on the face of the guaranty, albeit by a trade name, and that principal debtor is allowed by law to enter contracts in its trade name, and required by law to honor those contracts. See Tracy, supra.

This case may be analogized to the situation in John Deere, supra. In that case, like this one, there was a question of whether one of the required parties was sufficiently identified in the guaranty. The facts of John Deere showed that

> [i]n the body of the guaranty, the guarantor is referred to as the "undersigned." [The guarantor's] name is not typed anywhere on the guaranty; his allegedly illegible signature appears under the typed word "Guarantor(s)" and over the typed word "Name." His handwritten address follows.

The guarantor in the John Deere case claimed that the guaranty was unenforceable because it failed to properly identify him, that failure amounted to the complete omission of a required term, and, due to the complete omission, parol evidence could not be used to supply the missing term. The Court of

Appeals agreed with the guarantor, but, on review, we reversed. We found the guaranty to be enforceable, holding:

> In this case, the Court of Appeals stated it could not allow parol evidence to supply a "missing essential element . . . required to be in writing," relying upon Sawyer v. Roberts, 208 Ga. App. 870, 871 (432 SE2d 610) (1993) [("Parol evidence is not admissible to supply any missing essential elements of a contract required to be in writing by our statute of frauds." [Cit.])]. . . . But, no such allowance is necessary because the essential written terms are not "missing" from this guaranty. [The guarantor's] signature, together with the terms "undersigned" and "Guarantor(s)," identify him as the guarantor and satisfy the writing requirement of OCGA § 13-5-30 (2). Certainly, "[p]arol evidence is inadmissible to add to, take from, or vary a written contract." OCGA § 13-2-2 (1); see also [former] OCGA § 24-6-1. But, in no way does parol evidence add anything to, take anything from, or vary any provision of the guaranty at issue; the signature remains in the contract, unaltered. Parol evidence is introduced only when [the guarantor] questions whether it is, in fact, his signature, and John Deere produces evidence that it is. Its introduction in this case does not alter the required elements, which are in this guaranty.

Id. at 194-195. We also noted that "the Court of Appeals' citation to OCGA § 10-7-3 for the proposition that the liability of a surety cannot be extended by implication or interpretation is misplaced; [the guarantor's] liability is established by the terms of the guaranty, and is in no wise being extended." Id. at 195, n. 3.

The same analysis applies in this case. Lynchar, through the use of a trade name,[2] is identified on the face of the guaranty as the principal debtor, and the law allows an entity to enter binding legal contracts using a trade name. There is, therefore, no missing essential element required to make the guaranty enforceable, and the writing requirement of OCGA § 13-5-30 (2) is satisfied. If, however, Lynchar were to contend that T&W Oil was not its trade name or that Lynchar had not, in fact, entered into the agreement, parol evidence could then be introduced to show that it was and did. In that instance, parol evidence would not extend the liabilities of the individual guarantors in this case by implication or interpretation. Their liability is established by the terms of the guaranties they knowingly entered.

Even if "T&W Oil, Inc." was not one of the trade names employed by Lynchar, but was, instead, a misnomer of one of its other trade names ("T&W Oil Co." or "T&W Oil Company, Inc."), the same result would occur. An undertaking by Lynchar, even if it used a completely fictional name, would still be the obligation of Lynchar, and the inclusion in the guaranty of a named

_____

[2] In its brief and at oral argument, Lynchar admits that "T&W Oil, Inc." is a fictitious trade name identifying Lynchar.

11

debtor, though misnamed, satisfies the writing requirement of the Statute of Frauds. To the extent that any misnomer or clerical defect created any ambiguity or Lynchar contended that it was not a party to the guaranty, parol evidence would be admissible to identify the parties to the guaranty, just as discussed in the preceding paragraphs.

3. In accordance with the discussion set forth above, we now find that the identification of the principal debtor by only its trade name does not render a contract of suretyship or guaranty unenforceable on its face pursuant to the Statute of Frauds, and, concurrently, we find that the guaranties at issue in this case are enforceable. In light of this holding, we further find that the contrary holding in PlayNation, supra, is incorrect, and we hereby overrule that opinion.

Judgment reversed. All the Justices concur.

Decided June 18, 2018.

Certiorari to the Court of Appeals of Georgia — 341 Ga. App. 489.

Ellis, Painter, Ratterree & Adams, Tracy A. O'Connell, for appellant.

Brown & Adams, Benjamin W. Wallace, for appellees.