**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely
filed.**
**https://www.gaappeals.us/rules**

**February 8, 2024**

# In the Court of Appeals of Georgia

A23A1647. SHERRITT v. SB PAULDING COMMONS, LLC.

MARKLE, Judge.

Christian Sherritt appeals from the trial court's order granting summary judgment to SB Paulding Commons, LLC ("SBPC") in this suit to enforce a guaranty. On appeal, Sherritt argues that the guaranty was unenforceable because it failed to properly name the debtor; the award of 150 percent of the rent was an unenforceable penalty; and there was insufficient evidence to establish damages and attorney fees. For the reasons that follow, we affirm the trial court's conclusion that the guaranty was enforceable and that there was sufficient evidence to establish the amount of damages, but we vacate the damages award to the extent it included the award of 150 percent of rent and attorney fees, and remand the case for further

proceedings.

> We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

*Massey v. State Farm Fire & Cas. Co.*, 363 Ga. App. 588, 589 (871 SE2d 685) (2022).

So viewed, the record shows that, in July 2021, SBPC entered into a lease agreement to let retail space in its shopping center to Cesium, LLC, d/b/a Marigold Market. The lease identified the "tenant" as Cesium, and the "guarantor" as Christian Sherritt. As is relevant to this appeal, the lease contained the following clauses:

> Each of the individuals identified as guarantors . . . shall execute and deliver to Landlord a personal guaranty of Tenant's obligation under this Lease . . . contemporaneous with the execution of this Lease.

> In the event Tenant ceases its business operation at the Premises, . . . Tenant shall, beginning upon the date Tenant ceases its business operation at the Premises, pay to Landlord one hundred fifty percent (150%) of the Fixed Minimum Rent in effect . . . until such time as Tenant re-commences its business operation at the Premises.

Cesium also agreed to pay utilities, and, in the event it defaulted on any of the lease terms, the "costs of reletting," which included any repairs and improvements, and brokerage commissions. Sherritt signed the lease as the owner of Cesium. That same day, Sherritt signed a guaranty that identified her as the "Tenant" and named her as the guarantor of the lease.

Cesium took possession of the property in October 2021 and made payments under the terms of lease through May 2022. Thereafter, SBPC notified Sherritt that Cesium was in default and gave her the opportunity to cure it.

When neither Cesium nor Sherritt cured the default, SBPC filed suit against Cesium and Sherritt. Cesium filed for bankruptcy, which stayed the proceedings against it, but the trial court allowed the case to continue against Sherritt. Sherritt answered the complaint, admitting that she signed the guaranty and that she did so contemporaneously with the lease.

SBPC moved for summary judgment as to its claims against Sherritt. Attached to the motion was an affidavit from Wells Scott, an employee of SBPC's property manager. Scott averred that he had personal knowledge of Cesium's and Sherritt's contractual performance, as well as the lease records, and that the records were kept

in the ordinary course of business. Scott then confirmed that Cesium took possession of the premises in October 2021 and made payments as required by the lease until it abandoned the premises in June 2022. Scott explained that SBPC eventually obtained a new tenant for the property, but that it incurred brokerage expenses and costs of improvements to do so. Scott verified the accuracy of the account statement detailing the amounts owed, including rent, late fees, utilities, costs associated with reletting the premises, and prejudgment interest, which totaled $104,666.59.

Sherritt opposed the motion, arguing that the guaranty was unenforceable because it violated the Statute of Frauds by failing to identify the parties; there was no proof of damages because Scott's affidavit was hearsay, and discovery was still pending; the damages provision in the lease allowing SBPC to collect 150 percent of the rent violated public policy; and SBPC was not entitled to attorney fees.

The trial court granted summary judgment to SBPC,[1] finding that the guaranty was enforceable because it was signed contemporaneously with the lease and thus clarified the identity of the debtor, and payment of the 150 percent of the fixed minimum rent was merely a contract term rather than a penalty or liquidated damage.

---

[1] The trial court did not conduct a hearing on the summary judgment motion, but it was not required to do so where neither party filed a written request. See *Holladay v. Cumming Family Medicine*, 348 Ga. App. 354, 355 (823 SE2d 45) (2019); Uniform Superior Court Rule 6.3.

It also awarded attorney fees under OCGA § 13-1-11. Sherritt now appeals.

1. In her first enumeration of error, Sherritt argues that the guaranty is unenforceable because it failed to identify the debtor, and considering the lease and guaranty together does not correct the error. We disagree.

> [T]he Statute of Frauds requires that a promise to answer for another's debt, to be binding on the promisor, "must be in writing and signed by the party to be charged therewith." OCGA § 13-5-30 (2). This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee. . . . The statute of frauds is for the prevention of frauds and perjuries, not to shield or enable them.

(Citations and punctuation omitted.) *Colonial Oil Indus. v. Lynchar, Inc.*, 303 Ga. 839, 843-845 (2) (815 SE2d 917) (2018).

In a case involving our former Evidence Code, we explained that we could look to all contemporaneous writings to explain each writing in order to satisfy the Statute of Frauds. *Hong Investments v. Sarsfield*, 312 Ga. App. 82, 83 (717 SE2d 679) (2011) (discussing OCGA § 24-6-3 (a)); see also OCGA § 24-3-3 (a). This same rule applied even where the guaranty includes a scrivener's error as to the debtor's name; a trial court may correct that error when construing the lease and the guaranty together. See *C. L. D. F., Inc. v. The Aramore, LLC*, 290 Ga. App. 271, 273-274 (1) (659 SE2d 695)

(2008) (decided under former Evidence Code, explaining "[a]s a matter of contract law, we must consider the Lease and the Guaranty together, as contemporaneous writings, in an effort to derive their intended meaning."). We find these cases instructive. Although OCGA § 24-6-3 was repealed by our new Evidence Code, similar language is currently found in our new Evidence Code in OCGA § 24-3-3 (a). Thus, even under our new code, "[a]ll contemporaneous writings shall be admissible to explain each other." OCGA § 24-3-3 (a).

Here, there is no dispute that Sherritt signed both documents and identified herself as the "owner" of Cesium on the lease. These documents were executed on the same day. The guaranty makes it clear that Sherritt is obligated to pay any amounts due under the lease between Cesium and SBPC. And the lease, which identifies Cesium as the "tenant" and Sherritt as the "guarantor," confirms that the execution of the guaranty was a requirement for the lease. When viewed together, the two documents are sufficient to satisfy the Statute of Frauds. *Hong*, 312 Ga. App. at 83-84; *C. L. D. F.*, 290 Ga. App. at 273-274 (1). Therefore, the fact that the guaranty mistakenly referred to Sherritt instead of her company as the "Tenant" is insufficient to render the guaranty unenforceable. *C. L. D. F.*, 290 Ga. App. at 273-274 (1); see also *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 106 (661 SE2d 578) (2008)

(where there was confusion in listed names of the customer and the guarantor, guaranty was "capable of only one reasonable interpretation" because it would be unnecessary for individuals to guaranty their own debt; thus term referred to business entity) (citation and punctuation omitted); cf. *Colonial Oil Industr.*, 303 Ga. at 844-846 (2) (guaranty that identified debtor by trade name was enforceable). To view otherwise would effectively allow the Statute of Frauds to be used to enable fraud rather than protect against it. *Colonial Oil Indus.*, 303 Ga. at 844-845 (2) ("allowing a party to avoid a guaranty obligation he knowingly undertook simply because another party used a trade name, despite the fact that all parties to the agreement knew to whom the trade name referred, would undercut the purpose of the Statute of Frauds."). Accordingly, the trial court properly found the guaranty was enforceable.

2. Sherritt next challenges the order allowing SBPC to collect 150 percent of the fixed minimum rent because it is an unenforceable penalty. We conclude that the trial court applied the wrong analysis.

> OCGA § 13-6-7 provides: "If the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated, and, unless the agreement violates some principle of law, the parties are bound thereby." But a provision that is intended to deter breaches of the contract by imposing a penalty for a breach that is not a reasonable pre-estimation of damages is unenforceable under Georgia law. In order

to resolve whether a provision for damages for breach amounts to "liquidated damages" under OCGA § 13-6-7, or is an unenforceable penalty clause, the trial court at the summary judgment level must conduct a tripartite inquiry according to these standards: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the loss.

(Citations and punctuation omitted.) *West Asset Mgmt. v. NW Parkway*, 336 Ga. App. 775, 784 (3) (784 SE2d 147) (2016); see also *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976); *Oami v. Delk Interchange*, 193 Ga. App. 640, 641 (388 SE2d 706) (1989). Sherritt bears the burden of showing the provision is a penalty rather than liquidated damages. *Oami*, 193 Ga. App. at 641.

Here, the trial court found the provision requiring payment of 150 percent in the event of default was neither a penalty nor a liquidated damage clause, but instead was "simply a contract term."[2] In support of its conclusion, the trial court cited *America Net v. U. S. Cover*, 243 Ga. App. 204, 209 (3) (532 SE2d 756) (2000), overruled on other grounds by *Smith v. Bell*, 346 Ga. App. 152, n. 1 (816 SE2d 698) (2018).

---

[2] Although the trial court made this finding, it also referred to the amount of unpaid rent as liquidated damages.

But the trial court did not conduct the required tripartite analysis. Although whether the provision was a penalty is a question of law, it "necessarily requires the resolution of questions of fact." *City of Brookhaven v. Multiplex, LLC*, 369 Ga. App. 9, 11 (891 SE2d 60) (2023). Where, as here, the trial court has not made the necessary findings of fact under the proper analysis, we must vacate the award and remand for the trial court to apply the tripartite test in the first instance. *Goldberg v. Black*, 165 Ga. App. 33 (299 SE2d 78) (1983) ("the trial court made no findings with regard to the validity or enforceability of the contract provision regarding liquidated damages, nor did the trial court apply the required tripartite test as stated above. . . . Under the circumstances, we must reverse and remand[.]").

3. Sherritt also argues that there was no evidence to support the amount of damages because the only evidence submitted was hearsay and it did not contain sufficient information for the trial court to determine the amount with any certainty. We disagree.

> Where a party sues for damages, it has the burden of proof of showing the amount of loss in a manner in which the trial judge can calculate the amount of the loss with a reasonable degree of certainty. Thus, in a suit to enforce a promissory note or guaranty, the plaintiff has the burden of proving that the defendant is indebted to him in a definite and correct amount.

9

(Citations and punctuation omitted.) *Patrick Malloy Communities v. Community & Southern Bank*, 334 Ga. App. 76, 82 (2) (778 SE2d 242) (2015).

Here, the guaranty provided that, in the event of a default, the guarantor would pay "all damages that may arise" from the breach of the lease.[3] To support its claim of damages, SBPC submitted an affidavit from an employee of its property manager and a statement summarizing the outstanding balance for rent, utilities, insurance, late fees, and interest, as well as the amounts paid to obtain a new tenant and make necessary improvements. The employee averred to his personal knowledge of the account, and that these records were kept in the ordinary course of business; thus, this evidence was admissible. OCGA § 24-10-1006; see also *Roberts v. Community & Southern Bank*, 331 Ga. App. 364, 370-371 (2) (771 SE2d 68) (2015). Based on this evidence, the trial court awarded damages for unpaid rent and utilities, late fees, prejudgment interest, and "costs of reletting."[4]

The affidavit and attached statement were sufficient to establish the amount

---

[3] Sherritt also argues that the guaranty did not cover liquidated damages, but, as noted, the guaranty explicitly provided it would cover "all damages."

[4] Although SBPC argues that Sherritt submitted no evidence in response to the summary judgment motion, we note that the burden was on SBPC to establish its damages. *Patrick Malloy Communities*, 334 Ga. App. at 82 (2).

10

owed under the lease. *Ware v. Multibank 2009-1 RES-ADC Venture*, 327 Ga. App. 245, 250 (2) (758 SE2d 145) (2014); see also *Angel Business Catalysts v. Bank of the Ozarks*, 316 Ga. App. 253, 256-257 (2) (728 SE2d 854) (2012) (affidavit and records established amount of damages); *Gerben v. Beneficial Ga.*, 283 Ga. App. 740, 742–743 (2) (642 SE2d 405) (2007) (sufficient evidence to support damages based on affidavit and attached documents).

4. Finally, Sherritt challenges the calculation of attorney fees on the entire amount of debt, arguing that it was error to award attorney fees on the entire amount of damages, including improvements, brokerage fees, and the increased rent due to abandonment. OCGA § 13-1-11 allows a party to collect attorney fees on "any note or other evidence of indebtedness[.]" OCGA § 13-1-11 (a).[5] This provision has been interpreted to mean "the rent *and other charges which the lease required tenants to pay* constituted the principal amount of their debt." (Citation and punctuation omitted; emphasis supplied.) *RadioShack Corp. v. Cascade Crossing II*, 282 Ga. 841, 842 (653 SE2d 680) (2007); see also *Holmes v. Bogino*, 219 Ga. App. 858, 859 (2) (467 SE2d 197) (1996).

---

[5] Sherritt does not dispute that she was given proper notice of the intent to collect attorney fees. Nor does she contend that the amount was improperly calculated under the scheme set forth in OCGA § 13-1-11 (a) (2).

Here, the lease required the tenant to pay the costs of reletting, as well as the costs of any improvements and brokerage fees. These costs were thus part of the indebtedness and can be included when determining the amount of attorney fees.[6] Nevertheless, because we must vacate the damages award that included a 150 percent rent amount, we also vacate and remand the award of attorney fees to be recalculated without that amount.

For the reasons discussed above, we conclude that the guaranty was enforceable and the trial court had sufficient evidence to establish damages. But the trial court must reconsider whether the 150 percent rent constituted a penalty. And, because the trial court must reconsider those damages, it must also recalculate the amount of attorney fees due. Accordingly, we vacate the award of damages and attorney fees, and remand the case to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part; vacated in part and case remanded. McFadden, P. J., and Brown, J., concur.*

---

[6] Although not at issue here, any such recovery would be limited by the statutory cap. See OCGA § 13-1-11; *RadioShack Corp.*, 282 Ga. at 845-846.